UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cr-20073-SLD |
| | ) | |
| HAROLD LACY, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

ORDER

Before the Court are Defendant-Petitioner Harold Lacy's *pro se* Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se 2255

Motion"), ECF No. 38, counseled Amended Motion to Vacate Sentence Pursuant to 28 U.S.C.

§ 2255 ("Amended 2255 Motion"), ECF No. 39, counseled Supplemental Amended Motion to

Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Supplemental 2255 Motion"), ECF No. 43, and

motion for a status conference, ECF No. 47.  For the reasons that follow, the Pro Se 2255 Motion

is MOOT, the counseled § 2255 motions are DENIED, and the motion for a status conference is

MOOT.

**BACKGROUND**

In November 2014, a grand jury indicted Lacy on one count of knowingly distributing a

mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C.

§ 841(a)(1) and (b)(1)(C).  Indictment 1, ECF No. 1.  Attorney Joseph Chamley was appointed to

represent Lacy pursuant to the Criminal Justice Act.  Nov. 14, 2014 Min. Entry.

On March 20, 2015, Lacy entered a plea of guilty to the charge against him pursuant to a

written plea agreement.  Mar. 20, 2015 Min. Entry; Plea Agreement, ECF No. 12.  His plea was

accepted by United States District Judge Colin Bruce, who was then presiding over the case, on

April 9, 2015.  Order Approving Magistrate Judge Recommendation, ECF No. 17.  Under the

plea agreement, Lacy waived his rights to appeal from and file a collateral attack against his

conviction and sentence (with exceptions for claims of involuntariness and ineffective assistance

of counsel).  Plea Agreement ¶¶ 28–30.

The United States Probation Office ("USPO") prepared a presentence investigation report

("PSR") in advance of sentencing.  *See* PSR, ECF No. 19.  USPO indicated that Lacy was a

career offender, *id.* ¶ 24, and listed his total offense level as 31 after acceptance of responsibility,

*id.* ¶¶ 25–27.  With a criminal history category of VI, *id.* ¶ 41, his Sentencing Guidelines range

for imprisonment was 188 to 235 months, *id.* ¶ 89.  He was subject to a thirty-year statutory

maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(C), *id.* ¶ 88, and a statutory

minimum six-year term of supervised release, *id.* ¶ 91.  Lacy did not object to the PSR.  *Id.* at 24.

The sentencing hearing was held on August 3, 2015.  Aug. 3, 2015 Min. Entry.  The

Government made a motion pursuant to § 5K1.1 of the Sentencing Guidelines requesting a ten

percent departure from 188 months of imprisonment.  Sentencing Hr'g Tr. 6:3–8, 7:7–10, ECF

No. 32.  Lacy requested a sentence in the range of 150 to 160 months.  *Id.* at 8:17–20.  Judge

Bruce said that going into the hearing, he thought he was going to sentence Lacy to 300 months

of imprisonment.  *Id.* at 15:2–6.  But because of the Government's motion, he decided to

sentence Lacy to 168 months of imprisonment.  *Id.* at 17:16–20.  "[A]s a courtesy," the

Government had "relay[ed] [a] request" from state prosecutors that Judge Bruce run the sentence

in the instant case consecutive to sentences imposed in pending Macon County, Illinois cases

against Lacy.  *Id.* at 10:12–21.  Without explaining why, Judge Bruce granted that request and

ordered—"to the extent that [he] ha[d] the authority to run a federal sentence consecutive to a

sentence in a state case to which the defendant has neither pleaded guilty nor yet been

sentenced"—that the 168-month sentence imposed in this case be served consecutively to any

sentence imposed in the pending Macon County cases "if [Lacy] pleaded guilty" in those cases.

*Id.* at 20:16–25.  Judge Bruce imposed the required six-year term of supervised release.  *Id.* at

21:17–18.  Judgment was entered on August 4, 2015.  Judgment 1, ECF No. 23.

Lacy filed a timely appeal.  Not. Appeal, ECF No. 26.  On February 17, 2016, the

Seventh Circuit dismissed his appeal because of the appellate waiver in his plea agreement.

*United States v. Lacy*, 813 F.3d 654, 655 (7th Cir. 2016).  The court noted, however, that "the

consecutive sentence g[a]ve[] [it] pause."  *Id.* at 658.  It explained that "the impetus for the

consecutive sentence—extending a courtesy to a state prosecutor—was not a proper sentencing

consideration for the district court."  *Id.*  It acknowledged that Judge Bruce had discretion to

impose the consecutive sentence but noted that he "should have explained how doing so would

advance the considerations set out in 18 U.S.C. § 3553(a)."  *Id.*

On May 31, 2020, Lacy filed the Pro Se 2255 Motion.  Pro Se 2255 Mot. 13[1] (declaring

that Lacy placed the motion in the prison mailing system on May 31, 2020).  He argues that

Judge Bruce was biased in favor of the Government, which resulted in him imposing a

consecutive sentence in Lacy's case.  *Id.* at 4–5.  This claim is based on *ex parte* communications

between Judge Bruce and the United States Attorney's Office for the Central District of Illinois

("USAO") that came to light in 2018.  *See United States v. Atwood*, 941 F.3d 883, 884–85 (7th

Cir. 2019) (providing a brief explanation of the discovery and disclosure of the

communications).  Judge Bruce recused himself from hearing Lacy's motion, and the case was

reassigned to this Court.  June 11, 2020 Text Order of Recusal.

---

[1] The Court uses the page numbers generated by CM/ECF because the Pro Se 2255 Motion is not consistently paginated.

The Court appointed Federal Public Defender Thomas Patton to represent Lacy with respect to the motion.  June 12, 2020 Text Order.  Counsel filed the Amended 2255 Motion, mooting the *pro se* motion, on July 2, 2020.  Am. 2255 Mot. 1.  The Amended 2255 Motion raises two claims: first, that Judge Bruce is actually biased in favor of the Government and that his presiding over Lacy's case violated Lacy's due process rights, *id.* at 30–33; and second, that Judge Bruce violated 28 U.S.C. § 455(a) by failing to recuse himself based on appearance of bias, *see id.* at 33–36.

The Government filed a response on August 31, 2020.  Resp. Am. Mot. 1, ECF No. 40. It argues that Lacy cannot show that Judge Bruce was actually biased against him, that the statutory claim "is not a proper basis for relief in a § 2255 proceeding," that Lacy waived his right to assert his claims in his plea agreement, that he procedurally defaulted his claims by failing to raise them on appeal, and that the statutory recusal claim is untimely.  *Id.* at 13–14.

Patton filed a reply, ECF No. 41, along with a motion to withdraw from representation, ECF No. 42.  The reply disputes the Government's merits arguments, Reply 1–9, argues that the collateral attack waiver in the plea agreement is unenforceable, *id.* at 9–11, argues that Lacy's claims are not procedurally defaulted, *id.* at 11–12, and suggests that there is "a strong claim for equitable tolling" based on Patton's ineffectiveness, *id.* at 12–13.  Because the claim of equitable tolling would require Lacy to argue that Patton was ineffective, however, Patton moved to withdraw as Lacy's counsel.  *See* Mot. Withdraw 2.  The Court granted the motion to withdraw and appointed Charles Schierer to represent Lacy.  Oct. 6, 2020 Text Order.  Schierer filed the Supplemental 2255 Motion on Lacy's behalf on October 13, 2020.  Suppl. 2255 Mot. 1.  The Supplemental 2255 Motion was filed "only to raise the equitable tolling issue." *Id.*  The

4

Government filed another response, which incorporated its earlier response and addressed Lacy's

new arguments.  Resp. Suppl. Mot. 1 n.1, ECF No. 46.[2]

No further reply was filed, though Lacy later moved for a status conference.

## DISCUSSION

### I.      Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set

aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy

because it asks the district court essentially to reopen the criminal process to a person who

already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521

(7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in

violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the

sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral

attack."  *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C.

§ 2255(a)).

### II.     Analysis

The Court first addresses the Government's waiver and procedural default arguments as

they apply to both of Lacy's claims, and then addresses each claim and any defenses specific to

the claim.

---

[2] The Government contends that Lacy added a claim that the Federal Public Defender provided ineffective assistance of counsel in violation of the Sixth Amendment by failing to include appearance of bias claims in a tolling agreement with the Government. *See* Resp. Suppl. Mot. 18, 22–34.  Though there is a brief reference to ineffective assistance of counsel in the Supplemental 2255 Motion, Suppl. 2255 Mot. 2 ("Mr. Patton's failure to secure the equitable tolling for Petitioner on the recusal issue amounts to ineffective assistance of counsel."), the motion purports to only address equitable tolling rather than add a substantive claim for relief, *id.* at 1–3.  In any case, Lacy had no right to counsel beyond his direct appeal. *See Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . ."); *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)).  Thus, any deficient performance with respect to securing postconviction tolling agreements would not create a Sixth Amendment violation and this claim would be meritless.

**A. Waiver**

Lacy's plea agreement contains a waiver of his right to collaterally attack his conviction and sentence with limited exceptions. *See* Plea Agreement ¶¶ 29–30. The Government argues that this "waiver should be enforced and [Lacy's] claims should be dismissed." Resp. Am. Mot. 29–32.

"It is well-settled that waivers of direct and collateral review in plea agreements are generally enforceable." *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013).[3] If a collateral review waiver is voluntary and knowing, it is generally enforceable. *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012). "There are only limited instances when [the court] will not enforce a knowing and voluntary waiver of . . . collateral review . . . ." *Id.* Waivers are unenforceable, for example, if "the district court relied on a constitutionally impermissible factor (such as race)" in determining the sentence or "the sentence exceeded the statutory maximum." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (quotation marks omitted). Waivers are also unenforceable "against claims that counsel was ineffective in the negotiation of the plea agreement." *Hurlow*, 726 F.3d at 964. There are also "at least some due process exceptions to a waiver." *United States v. Adkins*, 743 F.3d 176, 192–93 (7th Cir. 2014). For example, a waiver "will not prevent a defendant from challenging . . . deprivation of some minimum of civilized procedure (such as if the parties stipulated to trial by twelve orangutans)." *Id.* (quotation marks omitted).

Lacy does not argue that the waiver was unknowing or involuntary or that his claims do not fall within the waiver's scope. *See* Reply 9–11. Instead, he contends that the waiver is

---

[3] The Seventh Circuit analyzes waivers of the right to appeal and to bring a collateral attack similarly. *Cf. Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) ("Our reasons for upholding the voluntariness requirement in the context of waivers of direct appeal rights apply with equal force to the right to bring a collateral attack pursuant to § 2255.").

unenforceable because 1) his "bias claim . . . meets the due process exception to appeal and collateral attack waivers" and "the failure to recuse under § 455(a) [under the unique facts of this case] likewise calls into question fundamental fairness to [him] and the legitimacy of the judiciary" and thus should also be excepted from the waiver, *id.* at 9–10, and 2) "the [G]overnment is . . . prohibited from enforcing the collateral attack waiver under the equitable doctrine of unclean hands," *id.* at 10–11.

The Court finds neither of Lacy's arguments persuasive. First, though Lacy's actual bias claim is a due process claim, *see Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("Due process guarantees an absence of actual bias on the part of a judge." (quotation marks omitted)), not all due process claims are excepted from collateral review waivers. Lacy cites no cases finding an exception for judicial bias claims. And other courts have enforced waivers against judicial bias claims. *See United States v. Carver*, 349 F. App'x 290, 292–94 (10th Cir. 2009); *Anderson v. United States*, No. CV 12-1025 MCA/WPL & CR 10-0086 MCA, 2013 WL 12164686, at *5–6 (D.N.M. Mar. 7, 2013), *adopted by* 2015 WL 12859352, at *3–4 (D.N.M. Aug. 17, 2015). Lacy also cites no support for the proposition that the due process exception to collateral review waivers would encompass a *statutory* claim for violation of 28 U.S.C. § 455(a) based on an appearance of bias. Second, Lacy's unclean hands argument is underdeveloped. He cites no cases applying the unclean hands doctrine to plea agreements and does not develop the facts about who in the USAO knew that USAO employees were engaging in *ex parte* contact with Judge Bruce, when they knew it, or how the misconduct relates to Lacy's waiver. *See United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("It is not th[e] court's responsibility to research and construct the parties' arguments.").

7

Accordingly, the Court finds that Lacy's statutory § 455(a) claim and his due process bias claim are barred by his collateral review waiver. Nevertheless, as explained below, the Court would deny those claims even if there were no collateral review waiver.

### B. Procedural Default

"A claim cannot be raised for the first time in a § 2255 motion *if it could have been* raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (emphasis added). The Government argues that Lacy procedurally defaulted his claims by failing to raise them on appeal. Resp. Am. Mot. 33. Anticipating an argument that "the *ex parte* emails had not been revealed at the time, and therefore [Lacy] could not have raised such a claim," the Government argues that "the emails had nothing to do with [Lacy's] case, and [Lacy] cannot excuse his own procedural failure by belatedly asserting misconduct in unrelated cases to bolster a claim he chose not to make." *Id.* at 33–34. But the Government provides no case law support for its argument that Lacy cannot rely on these communications, which became public over two years after his appeal was dismissed, to excuse his default. Instead, it appears to be making an argument that the communications do not support Lacy's claim. But that is better considered as an argument on the merits. The Court does not find that Lacy procedurally defaulted his claims.

### C. Due Process

The due process claim is based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, more than two years after Lacy's appeal was dismissed. These communications have been detailed and summarized elsewhere. *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019),

http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf).  Lacy argues that these communications—among other documents and information—demonstrate that Judge Bruce was actually biased against him, violating his due process rights.  *See* Am. 2255 Mot. 3–33.

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'"  *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)).  A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."  *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here.  In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the defendant's case.  It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the communications "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party."  *Id.* at 1061–62 (quotation marks omitted).  Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation."  *Id.* at 1062.  It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences."  *Id.* (quotation marks

omitted).  Lacy primarily relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case specifically or any evidence showing that the communications impacted his case.  *See* Am. 2255 Mot. 4–25, 30–33.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing.  *Shannon*, 39 F.4th at 884–86.  In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence.  *Id.* at 886–87.  Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments.  *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority).  Lacy points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him.  He does complain about Judge Bruce's decision to impose the federal sentence consecutive to the state sentences, *see* Am. 2255 Mot. 35–36, but this is more procedural—the failure to explain the decision[4]—than the issue that troubled the Seventh Circuit in *Shannon*. (And, moreover, this Court does not have the supervisory authority the Seventh Circuit exercised in *Shannon*.)

Lacy argues that *Williams* does not dictate the result of his case.  *See* Reply 6.  (He does not address *Shannon*, which was decided after the briefing was completed in this case.).  He argues that he has presented additional evidence that warrants an evidentiary hearing to further

---

[4] The Seventh Circuit noted that it "would not question the substantive decision to impose a consecutive sentence" in this case because the state cases were unrelated to the federal heroin conviction.  *See Lacy*, 813 F.3d at 658.

explore any potential bias by Judge Bruce. *See id.* at 4–5; Am. 2255 Mot. 32–33.  Further, he

argues that the Government cannot assert collateral estoppel based on the Seventh Circuit

Judicial Council's resolution of the misconduct complaints filed against Judge Bruce, Reply 1–4,

and that it is "fundamentally unfair" to him if the Court is "bound" by the results of those

proceedings as he could not participate in them, Am. 2255 Mot. 33.

The Court agrees that the Seventh Circuit cases and the Judicial Council's resolution do

not "conclusively foreclose[]" a finding of actual bias as the Government suggests, *see, e.g.*,

Resp. Am. Mot. 23, but instead finds that the evidence Lacy has submitted is sufficiently similar

to the evidence at issue in *Williams* such that the same holding—that Lacy fails to demonstrate

actual bias or a risk of bias so high that it violates due process—is warranted.

Here, the additional evidence Lacy submits to the Court consists of emails between

Assistant United States Attorney ("AUSA") Tim Bass and the Department of Justice's Office of

Inspector General ("OIG") and a memorandum paralegal Lisa Hopps wrote for the Deputy

Director of the Executive Office for United States Attorneys ("EOUSA").  *See* Am. 2255 Mot.

25–29.[5]  He argues that these show that Judge Bruce "continued to operate as a part of USAO

management," that Judge Bruce was biased against Bass, and that "Judge Bruce acts on his

biases." *Id.* at 29.[6]

---

[5] Lacy did not attach these documents to his motion but rather cites to them from the docket of *United States v. Nixon*, No. 2:15-cr-20057-JES-JEH (C.D. Ill.).  Cites to this docket will take the form: Nixon ECF No. __.
[6] The following is a summary of this evidence.

On December 5, 2017, Bass sent an email with the subject line "Follow-up" to OIG (which suggests this was not his first contact with OIG). *See* Dec. 5, 2017 12:32 PM Bass Email, Nixon ECF No. 213-3 at 9.  He indicated that he could provide information to OIG about Judge Bruce's "repeated contact" with the current and past Acting United States Attorneys for the Central District of Illinois Patrick Hansen and John Childress. *Id.*  Later that day, Bass forwarded to OIG an email chain between himself, Hansen, and Childress, adding an explanation that on November 16, 2017, Judge Bruce contacted Childress by phone and less than an hour later Childress was sworn in as Acting United States Attorney; that same evening, Hansen informed a paralegal that he did not want to be assigned to *United States v. Shock*, No. 3:16-cr-30061 (C.D. Ill.); and Hansen and Childress both told the paralegal that they thought Judge Bruce was hostile to Bass. Dec. 5, 2017 1:53 PM Bass Email, Nixon ECF No. 213-1 at 37–40.  He followed up the next day with an email to OIG stating that Judge Bruce had had repeated *ex parte* contact with Hansen and Childress and that Judge Bruce singled Bass out for providing a false and misleading response in

The Court finds that this is simply more of the same type of evidence that the Seventh Circuit found failed to establish a due process violation in *Williams*.  It shows that Judge Bruce had relationships with people in the USAO and suggests that he had had *ex parte* communications with them.  *See Williams*, 949 F.3d at 1062.  And it could show that Judge Bruce was biased against Bass.  But it does not demonstrate any concerning communications regarding Lacy's case or suggest that Judge Bruce's *ex parte* communications had an impact on Lacy's sentencing.  *See id.*

The Court thus finds that Lacy has failed to show either actual bias or a risk of bias so high that it violates due process.  The due process claim would be denied even if it were not waived.

**D.  Section 455(a)**

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  In the alternative to his due process claim, Lacy argues that Judge Bruce should have recused himself under § 455(a) due to an appearance of bias and that this failure was not harmless.  Am. 2255 Mot. 33–36.  The Government does not explicitly address whether Judge Bruce's impartiality might reasonably have been questioned

---

*Shock* that was authored by Hansen, Bass, and another AUSA.  Dec. 6, 2017 5:48 PM Bass Email, Nixon ECF No. 213-1 at 32–36.  Bass had a call with OIG that day.  *See* Dec. 6, 2017 9:01 PM Bass Email, Nixon ECF No. 213-1 at 30–32 (referencing a call).  He followed up with an email to which he attached emails between Hopps and Judge Bruce which Bass believed showed a personal bias against Bass and Judge Bruce's willingness to engage in inappropriate *ex parte* contacts with the USAO about pending cases.  *See id.*  Bass stated his belief that "there [we]re reasonable grounds for OIG to review whether Mr. Hansen and Mr. Childress and Judge Bruce engaged in a concerted effort . . . to undermine and sabotage" the *Shock* case (a high-profile case), to cause Bass to be removed from the *Shock* case, and to interfere with the United States Attorney selection process.  *Id.*

On August 13, 2018, Hopps provided a memorandum to the Deputy Director of the EOUSA about the *Shock* case.  Hopps Mem., Nixon ECF No. 213-6.  She stated that Judge Bruce "disparag[ed] [Bass] and his chances to become a magistrate judge" while on the phone with Hopps.  *Id.* at 3.  She stated that in another conversation, Judge Bruce told her that Bass "wouldn't even make it out of committee," which he did not.  *Id.*  She reported that Judge Bruce had close relationships with Hansen and Childress and that many in the USAO were "aware of [Judge Bruce's] dislike of [Bass]."  *Id.*  Finally, she reported that Judge Bruce had "been unable to disconnect himself from [their] office" and that it was like he was "a silent part of management."  *Id.*

and, thus, whether he should have recused himself from Lacy's case under § 455(a).[7]  Instead, it

argues that this statutory claim is untimely and not cognizable on § 2255 review.  Resp. Am.

Mot. 23–29, 36–38.

### 1.  Timeliness

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking

to vacate his sentence under § 2255 has one year to do so, from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Lacy acknowledges that his Pro Se 2255 Motion was filed outside the one-year statute of

limitations provided by 28 U.S.C. § 2255(f)(1) but argues that he is entitled to equitable tolling

of the statute of limitations because Patton made a legal error and failed to preserve Lacy's right

to raise a claim based on Judge Bruce's failure to recuse from his case.  Suppl. 2255 Mot. 2.[8]

---

[7] To the Court's knowledge, the Government has conceded an appearance of bias—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far. *See, e.g.*, *Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

[8] The Court cannot ascertain whether Lacy contends his motion is timely under § 2255(f)(2), (3), or (4).  He states that there are "a few exceptions to the on[e]-year period of limitations in cases where there was an impediment from making a motion," citing to § 2255(f)(2), (3), and (4).  Suppl. 2255 Mot. 2.  But he makes no argument that any of these provisions apply.  Instead, he goes on to argue for equitable tolling, *id.*, which is a common law doctrine distinct from the statutory provisions, *cf. Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013) (distinguishing between common law equitable tolling and § 2255(f)(2)).

The Government responds that Lacy is not entitled to equitable tolling because there is "no evidence showing that he exercised diligence in preserving the appearance of bias claim." Resp. Suppl. Mot. 22.

The time limits set forth in § 2255(f) are subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017) (applying the equitable tolling doctrine to a motion under § 2255). A petitioner is entitled to equitable tolling if he can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quotation marks omitted). "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling." *Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018).

Here, Lacy barely develops an argument that he has met either element of the *Holland* test. He cites *Holland* for the proposition that "[a]n attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling" but then merely states that Patton told him he made a legal error and failed to preserve his right to bring a claim based on Judge Bruce's failure to recuse. *See* Suppl. 2255 Mot. 3 (quotation marks omitted). Lacy does not acknowledge that in *Holland*, the Supreme Court held that "a garden variety claim of excusable neglect . . . does not warrant equitable tolling," *Holland*, 560 U.S. at 651–52 (quotation marks and citations omitted), or that the facts of *Holland* are quite distinguishable from the facts of his case. In *Holland*, the Supreme Court found that the

14

attorney's conduct "may well" have warranted equitable tolling because the facts showed that it

went beyond simple negligence: the attorney did not file the petitioner's § 2254 petition on time

despite the petitioner sending "many letters that repeatedly emphasized the importance of his

doing so"; he did not research the applicable filing date; he did not inform the petitioner that the

Florida Supreme Court had decided his case despite the petitioner's "many pleas for that

information"; and the attorney "failed to communicate with his client over a period of years,

despite various pleas from [the petitioner] that [the attorney] respond to his letters." *Id.* at 652.

The Court remanded for further consideration because "no lower court ha[d] yet considered in

detail the facts of th[e] case to determine whether they indeed constitute extraordinary

circumstances sufficient to warrant equitable relief." *Id.* at 653–54.  Lacy points to no facts—

and cites no further cases—to support his argument that Patton's legal mistake would go beyond

mere negligence and support a finding of extraordinary circumstances warranting equitable

tolling.  *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("[I]ncorrect legal

advice generally does not by itself trigger equitable tolling.").  Moreover, he does not even argue

that he diligently pursued his rights.

The Court concludes that Lacy has failed to establish his entitlement to equitable tolling,

so it finds his § 455(a) claim untimely.

### 2.  Cognizability

Even if Lacy's § 455(a) claim were not barred by his collateral review waiver and were

not untimely, it would not warrant relief.  Section 2255 "was intended to afford federal prisoners

a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343

(1974).  Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence

was imposed in violation of the "laws of the United States," § 2255(a), not "every asserted error

of [nonconstitutional] law can be raised on a § 2255 motion." *Davis*, 417 U.S. at 346.  The

"appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which

inherently results in a complete miscarriage of justice, and whether it presents exceptional

circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."

*Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994)

(noting the standard as whether the federal law violation qualifies as "a fundamental defect

which inherently results in a complete miscarriage of justice [or] an omission inconsistent with

the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[9]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255

motion.[10]  In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the

relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of

a fundamental defect resulting in a complete miscarriage of justice." *Id.* (quotation marks

omitted).  It held that "[a]bsent that level of severity, the claim of an appearance of impropriety

is not cognizable under 28 U.S.C. § 2255." *Id.*  It noted that "section 455 and the Due Process

Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due

process deficiency." *Id.*  And it appeared to hold that a § 455(a) claim is only cognizable where

the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the

Due Process Clause overlap. *Id.* at 82, 83.[11]

---

[9] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[10] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available." *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)).  But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

[11] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear.  The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]." *Couch*, 896 F.2d at 80 (quotation marks omitted).  The

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed

without deciding "that as a general matter collateral attack upon a criminal sentence may be

available under section 2255 to pursue a claim of appearance of impartiality."  It made this

assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition*

*Corp.*, 486 U.S. 847 (1988).  *Liljeberg* involved a motion under Federal Rule of Civil Procedure

60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under

§ 455(a).  *Liljeberg*, 486 U.S. at 858, 863.  Rule 60(b)(6) allows district courts to grant relief

from a final civil judgment in "extraordinary circumstances."  *Id.* at 863–64 (quotation marks

omitted).  The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a),
> it is appropriate to consider the risk of injustice to the parties in the particular
> case, the risk that the denial of relief will produce injustice in other cases, and the
> risk of undermining the public's confidence in the judicial process.

*Id.* at 864.  The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of

impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental

defect' that would justify vacating an otherwise lawful sentence under section 2255."  *Hardy*,

878 F.2d at 97.  It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would

similarly hold that a criminal judgment may be collaterally attacked based on an appearance of

impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption

that it would "for purposes of [that] appeal."  *Id.*  The only dispositive holding from the Second

Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255

---

Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief.  *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255.").  It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so."  *Id.* at 82.  The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

17

because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*.  Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted).  Here, the alleged error does not rise to that level.  As noted above, Lacy has not established a due process violation and has no evidence that any of Judge Bruce's communications or relationships with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517 F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the defendant did not object and no prejudice resulted because the case "lack[ed] aggravating circumstances rendering the need for the remedy afforded by the writ of *habeas corpus . . . apparent*" (second alteration in original) (quotation marks omitted))).  And any violation of § 455(a) would have no bearing on Lacy's guilt or innocence. *See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete miscarriage of justice' standard required of nonconstitutional violations of federal law in order to be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed] [the court] to

redetermine h[ad] no bearing on the basic justice of his incarceration" and that nothing in the record indicated he was not guilty (quotation marks omitted)).

The Court does not find that *Liljeberg* requires a different result. *Liljeberg* identified three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6) due to extraordinary circumstances. *See Liljeberg*, 486 U.S. at 858. And in *Atwood*, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. *Atwood*, 941 F.3d at 885. The *Davis* standard for nonconstitutional errors requires more than a showing of extraordinary circumstances or that a statutory error was not harmless. It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard. *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a difference between reversing an error on appeal and correcting the error years later." *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Lacy has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice. His § 455(a) claim, therefore, does not warrant relief under § 2255.

19

### III.    Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a

certificate of appealability.  Rule 11(a), Rules Governing § 2255 Proceedings.  A court can grant

a certificate of appealability "only if the applicant has made a substantial showing of the denial

of a constitutional right."  28 U.S.C. § 2253(c)(2).  Lacy has failed to make a substantial showing

of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

### CONCLUSION

Accordingly, Defendant-Petitioner Harold Lacy's *pro se* Motion Under 28 U.S.C. § 2255

to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 38, is

MOOT.  His Amended Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 39,

and Supplemental Amended Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No.

43, are DENIED.  The motion for status conference, ECF No. 47, is MOOT in light of this

Order.  The Clerk is directed to enter judgment and close the accompanying civil case, 2:20-cv-

02165-SLD.

Entered this 12th day of June, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE